UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Richard Dillon and Bonnie Dillon,                File No. 22-cv-00126 (ECT/JFD)

      Plaintiffs,

v.                                              **OPINION AND ORDER**

United States of America; Charles Rettig,
*Commissioner of Internal Revenue*; L. Terra,
*Internal Revenue Service Staff Person*; and
Jeffrey Turner, *Revenue Officer*,

      Defendants.

---

Eric William Johnson, Johnson Tax Law P.C., St. Paul, MN, for Plaintiffs.

Justin Michael Fontaine, Department of Justice Tax Division, Washington, DC, for Defendants.

---

      Plaintiffs Richard and Bonnie Dillon brought this case seeking "issuance of a writ or order" directing the Internal Revenue Service to process and consider an offer-in-compromise the Dillons submitted to settle their income tax debts. Compl. [ECF No. 1] ¶ 1. Defendants have moved to dismiss. ECF No. 8. Defendants' primary contention is that subject-matter jurisdiction is lacking because the United States has not waived its sovereign immunity from suit in a way that would allow this case to proceed. Alternatively, Defendants argue that the Dillons' claims fail on their merits. Defendants' motion will be granted, and the case dismissed without prejudice, for lack of subject-matter jurisdiction. The United States has not waived its sovereign immunity with respect to the Dillons' claims in this case.

*The parties.*  The Dillons are a married couple residing in St. Paul, Minnesota, who have joint income tax debts, for tax years 2011 through 2017, amounting to more than $150,000.  Compl. ¶¶ 4–5.  In addition to the United States, there are three Defendants named in the Complaint: Charles Rettig, the United States Commissioner of Internal Revenue; "L. Terra," an IRS employee who signed the letter prompting this case; and Jeffrey Turner, the IRS Revenue Officer assigned to collect the Dillons' tax debts.  *Id.* ¶ 12.

*The Dillons' offer-in-compromise.*  On October 20, 2021, the Dillons submitted to the IRS an offer-in-compromise pursuant to 26 U.S.C. § 7122 and 26 C.F.R. § 301.7122-1.  Compl. ¶ 6.  These provisions give the IRS authority to settle tax liabilities for less than their full value.  26 U.S.C. § 7122(a); 26 C.F.R. § 301.7122-1(a)(1).  The regulation identifies three grounds for compromise: (1) doubt as to liability, (2) doubt as to collectability, and (3) promotion of effective tax administration.  26 C.F.R. § 301.7122-1(b).  The Dillons' offer invoked the third of these.  Compl. ¶ 7.  Under the relevant provision, "[a] compromise may be entered into to promote effective tax administration when the Secretary determines that, although collection in full could be achieved, collection of the full liability would cause the taxpayer economic hardship within the meaning of § 301.6343-1."  26 C.F.R. § 301.7122-1(b)(3)(i).  The specific basis for the Dillons' offer on this ground was that they are approaching retirement and—although their retirement funds of approximately $180,000 are sufficient to pay the tax debts—"collection of the retirement funds . . . would cause economic hardship to the Plaintiffs in retirement."  Compl. ¶ 7.

2

*The IRS's options for responding to the Dillons' offer.* Once submitted, an offer-in-compromise is either accepted for processing or returned to the taxpayer. 26 C.F.R. § 301.7122-1(d)(2). Offers accepted for processing ultimately may be accepted or rejected at the discretion of the Secretary. *Id.* § 301.7122-1(c)(1) ("Once a basis for compromise under paragraph (b) of this section has been identified, the decision to accept or reject an offer to compromise, as well as the terms and conditions agreed to, is left to the discretion of the Secretary."); *id.* § 301.7122-1(e)–(f) (provisions governing acceptance and rejection of an offer). If an offer that was accepted for processing is rejected, then an administrative appeal is available. 26 U.S.C. § 7122(e); 26 C.F.R. § 301.7122-1(f)(5)(i). The IRS may return an offer to the taxpayer for several reasons, including "if it determines that the offer was submitted solely to delay collection or was otherwise nonprocessable." 26 C.F.R. § 301.7122-1(d)(2). A return of an offer does not constitute a rejection, and no administrative appeal of a return is available, where the determination was that "the offer to compromise was submitted solely for purposes of delay under paragraph (d)(2)." *Id.* § 301.7122-1(f)(5)(ii).

*The IRS's response to the Dillons' offer.* The IRS did not accept the Dillons' offer for processing; it returned the offer with a letter dated November 3, 2021, explaining as follows: "We have determined that your offer was submitted solely to hinder or delay our collection actions which are expected to collect significantly more than the amount you have offered." Compl. ¶ 8.

*The Dillons' Complaint.* In this case, the Dillons seek "issuance of a writ or order" compelling the IRS to accept and process their offer-in-compromise "in the normal

course." *Id.* ¶ 1 & at 4 (following "Prayer for Relief"). The Dillons' central allegation is that the rationale the IRS provided in its letter returning the offer "is facially invalid" and lacks any plausible basis. *Id.* ¶¶ 10, 11. This is so, the Dillons allege, because their offer relied on principles of effective tax administration, which by definition means the offer was less than the IRS could collect. *Id.* ¶ 10. The Dillons allege that three statutes confer federal subject-matter jurisdiction over the case: the general federal-question statute, 28 U.S.C. § 1331; the mandamus statute, 28 U.S.C. § 1361; and the Administrative Procedure Act (or "APA"), specifically 5 U.S.C. § 702. Compl. ¶¶ 2, 15. The Dillons allege that the IRS staff who returned their offer-in-compromise "failed to perform a required legal duty under the laws of the United States, justifying a writ in the nature of *mandamus* under 28 U.S.C. § 1361." Compl. ¶ 13. The Dillons also allege that they "have suffered legal wrong because of agency action and/or are adversely affected or aggrieved by agency action" and are therefore entitled to judicial review of the IRS's decision to return their offer-in-compromise under authority of 5 U.S.C. § 702. Compl. ¶ 15.

*Defendants' motion and the Dillons' response.* Defendants seek dismissal of the Dillons' Complaint primarily on a jurisdictional ground. Defendants argue that the United States has not waived its sovereign immunity in a way that might permit the Dillons' case to proceed. *See* Defs.' Mem. in Supp. [ECF No. 10] at 10–16. Alternatively, Defendants argue that the Dillons' case fails on its merits. *See id.* at 16–20. The Dillons' response to Defendants' motion has narrowed the issues. The Dillons no longer contend that 28 U.S.C. § 1331 provides a basis for subject-matter jurisdiction over their claims. *See generally* Pls.' Mem. in Opp'n [ECF No. 14]. The Dillons also agree to the dismissal of all

4

Defendants other than the United States (in other words, the Commissioner and the two individual officer defendants).  *Id.* at 16.

*The familiar Rule 12(b)(1) standards.*  Sovereign immunity is a jurisdictional issue.  *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  A court reviewing a motion to dismiss for lack of subject-matter jurisdiction must first determine whether the movant is making a "facial" attack or a "factual" attack.  *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015).  The United States here presents a facial attack to subject-matter jurisdiction because it accepts the Dillons' factual allegations concerning jurisdiction as true.  *See Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).  In analyzing a facial attack, a federal court "restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)."  *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)).  "The plaintiff has the burden of proving subject matter jurisdiction."  *Compart's Boar Store, Inc. v. United States*, 829 F.3d 600, 604 (8th Cir. 2016).  "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."  *Meyer*, 510 U.S. at 475.  Accordingly, a court must determine whether a statutory waiver of sovereign immunity exists before it can allow that claim against the federal government to proceed.  *See United States v. Mitchell*, 463 U.S. 206, 212 (1983).

*The mandamus statute does not waive the United States' sovereign immunity.*  Though the Eighth Circuit once described the issue as "debatable," *Murray v. United States*, 686 F.2d 1320, 1325 (8th Cir. 1982), it has since recognized that "[i]t is well settled that the mandamus statute, 28 U.S.C. § 1361, does not provide a waiver of sovereign

5

immunity" on behalf of the United States, *In re Russell*, 155 F.3d 1012, 1012 (1998) (per curiam). Other Circuit Courts of Appeals agree. As one example, the First Circuit has explained:

> The mandamus statute provides that "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." [28 U.S.C. § 1361]. Because the mandamus statute applies only to officers and employees of the United States, rather than to the United States itself, the statute does not create any new cause of action against the government. It simply gives the courts jurisdiction in those instances in which substantive law already provides a remedy. Accordingly, the provisions of the mandamus statute do not waive the sovereign immunity of the United States.

*Muirhead v. Mecham*, 427 F.3d 14, 18 (1st Cir. 2005) (citing *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3 (1st Cir. 1989), and *Doe v. Civiletti,* 635 F.2d 88, 94 (2d Cir. 1980); *see also Fostvedt v. United States*, 978 F.2d 1201, 1203 (10th Cir. 1992) (describing mandamus statute as "conferring general jurisdiction" and not waiving sovereign immunity); *Wash. Legal Found. v. U.S. Sent'g Comm'n*, 89 F.3d 897, 901 (D.C. Cir. 1996) ("It is well settled that [the mandamus] statute does not by itself waive sovereign immunity."). Here, in view of the Dillons' assent to the dismissal of the individual Defendants, the United States is the lone remaining Defendant. Because the mandamus statute does not waive the United States' sovereign immunity, the Dillons' claim under the statute must be dismissed for lack of subject-matter jurisdiction. *See Murray*, 686 F.2d at

1326 (recognizing that the mandamus statute "does not apply to the United States itself" and that the absence of federal officials named as defendants required the suit's dismissal).[1]

*The APA does not waive the United States' sovereign immunity if another statute forbids the relief sought.* The APA waives the United States' sovereign immunity for actions seeking relief other than money damages and stating a claim that an agency, or officer or employee of an agency, acted or failed to act in an official capacity or under color of legal authority, but the waiver does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702; *see Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) ("That provision prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes."). The Anti-Injunction Act, 26 U.S.C. § 7421(a), and the Declaratory Judgment Act, 28 U.S.C. § 2201(a), forbid the relief sought here, rendering the APA's sovereign-immunity waiver inapplicable. G*unnink v. U.S. Gov't*, No. 08-cv-781 (RHK/AJB), 2008 WL 3166308, at *3 (D. Minn. Aug. 4, 2008) ("[A]n action brought under the APA is barred if it concerns the assessment or collection of federal taxes.") (quoting *McGuirl v. United States*, 360 F. Supp. 2d 129, 132 (D.D.C. 2004)), *aff'd*, 356 F. App'x 894 (8th Cir. 2009).

---

[1] Considering the Complaint's allegations, it is difficult to understand how any of the IRS officers originally named as Defendants might have acted in conflict with her or his statutory authority to trigger the *Larson-Dugan* exception to sovereign immunity. *See Muirhead*, 427 F.3d at 18–19; *Wash. Legal Found.*, 89 F.3d at 901; *see also Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1235 (10th Cir. 2005) ("Mandamus relief is available only to compel a government officer to perform a duty that is ministerial, clearly defined, and peremptory as opposed to duties within the officer's discretion." (quotation omitted)).

*The Anti-Injunction Act forbids the relief sought.* The Anti-Injunction Act "provides, with exceptions not relevant here, that 'no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person.'" 26 U.S.C. § 7421(a). If [plaintiff's] suit is not for that purpose, it can go forward. If the suit is for that purpose, it must be dismissed." *CIC Servs., LLC v. IRS*, --- U.S. ---, 141 S. Ct. 1582, 1588 (2021). Although the Eighth Circuit does not appear to have addressed the precise question, several circuits have concluded that the Anti-Injunction Act covers not merely assessment and collection, but also activities leading up to assessment and collection. *See Green Sols. Retail, Inc. v. United States*, 855 F.3d 1111, 1116 (10th Cir. 2017) (collecting cases).[2] This case concerns activities integral at least to collection. The Dillons agree that, if the IRS were required to accept their offer-in-compromise, the IRS could not levy against property to collect the tax liability "during the period the offer is pending, for 30 days immediately following the rejection of the offer, and for any period when a timely filed appeal from the rejection is being considered by Appeals." 26 C.F.R. § 301.7122-1(g); *see* Pls.' Mem. in Opp'n at 11–12. The relief sought would thus, if granted, restrain the IRS from moving forward with collection. The Dillons argue that the

---

[2] *Green Solutions* acknowledged that *Direct Marketing Ass'n v. Brohl*, 575 U.S. 1 (2015), called the Tenth Circuit's precedent into question but analyzed the issue in detail, concluding that *Direct Marketing* did not undermine Tenth Circuit precedent on the scope of the activities reached by the Anti-Injunction Act. 855 F.3d at 1115–20. This seems consistent with the Supreme Court's recent decision in *CIC Services*. *CIC Services* didn't address the exact issues here but suggests there is a zone of activity surrounding assessment and collection, in addition to literal assessment and collection, that falls under the Anti-Injunction Act. *See* 141 S. Ct. at 1590 ("The Anti-Injunction Act kicks in when the target of a requested injunction is a tax obligation—or stated in the Act's language, when that injunction runs against the 'collection or assessment of [a] tax.'").

8

equities of the situation should be considered, relying on *Smith v. Flinn*, 261 F.2d 781, 784 (8th Cir. 1958), *opinion modified on denial of reh'g*, 264 F.2d 523 (8th Cir. 1959).  There is also the "judicially created *Williams Packing* exception to the Anti-Injunction Act," under which "§ 7421(a) does not bar suits to enjoin the assessment or collection of a tax when 'it is clear that under no circumstances could the Government ultimately prevail' on its claim of liability and 'equity jurisdiction otherwise exists.'"  *Pagonis v. United States*, 575 F.3d 809, 814 (8th Cir. 2009) (quoting *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962)).  However, consideration of *Smith* and the *Williams Packing* exception are not necessary as both address a challenge to liability for the tax, and the Dillons here do not dispute liability.  *See Smith*, 261 F.2d at 784 ("[T]his court likewise recognizes the rule that, in cases where complainant shows that in addition to the illegality of an exaction in the guise of a tax there exist special and extraordinary circumstances sufficient to bring the case within some acknowledged head of equity jurisprudence, a suit may be maintained to enjoin the collector."); *Pagonis*, 575 F.3d at 814 (calling the *Williams Packing* exception a "limited situation, when the government's claim of liability is without foundation, [and so] 'the exaction is merely in the guise of a tax'").

*The Declaratory Judgement Act forbids the relief sought.*  The Declaratory Judgment Act prohibits the granting of declaratory relief "with respect to Federal taxes." 28 U.S.C. § 2201(a).  The Dillons acknowledge that the Declaratory Judgment Act and the Anti-Injunction Act "operate under similar principles."  Pls.' Mem. in Opp'n at 10.  And the Dillons do not separately address the Declaratory Judgment Act, implicitly conceding that, if the Anti-Injunction Act forbids the relief sought, then so does the Declaratory

Judgment Act.  Authorities justify the Dillons' approach to this question.  *E.g.*, *Taylor v. United States*, 292 F. App'x 383, 388–89 (5th Cir. 2008); *Montalvo v. United States*, 978 F.2d 715 (Table) at *2 (9th Cir. Oct. 28, 1992).

*

Because the Dillons have not identified a waiver of the United States' sovereign immunity, there is no subject-matter jurisdiction to consider the merits of their challenge to the return of their offer in compromise.  The United States' alternative argument that the Dillons have failed to state a claim upon which relief may be granted therefore need not be considered.

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1. Defendants United States of America, Charles Rettig, L. Terra, and Jeffrey Turner's Motion to Dismiss [ECF No. 8] is **GRANTED**; and

2. This action is **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:  August 10, 2022

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court